J-A19011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.V.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.G., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 770 EDA 2021 |

Appeal from the Order Entered March 11, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000229-2020

BEFORE: DUBOW, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                    Filed: September 9, 2021

Appellant, M.G. ("Father"), appeals from the March 11, 2021 Order that involuntarily terminated Father's parental rights to nine-year-old C.V.G. ("Child") after considering the Petition to Involuntarily Terminate Parental Rights ("TPR Petition") filed by J.T. ("Mother") and Z.T. ("Stepfather"). Upon review, we affirm.

Father and Mother are biological parents of Child, who was born in October 2011 in New Jersey, and they lived together for the first few years of Child's life. After Mother and Father moved to separate residences, Child lived with Mother and saw Father once or twice a week. Father has not contacted or seen Child since December 2016, when Child was five years old.

_____

[*] Retired Senior Judge assigned to the Superior Court.

In January 2017, Mother contacted Father to inform him she was moving to Philadelphia. On November 9, 2017, Father filed a Petition to Disestablish Paternity in New Jersey, where he resides; Father later withdrew the Petition. In September 2018, Mother married Stepfather and they have a biological child together.

On June 30, 2020, when Child was 8 years old, Mother and Stepfather filed a TPR Petition requesting, *inter alia*, to terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1). On November 17, 2020, the trial court appointed legal counsel for Child. On March 11, 2021, the trial court held a hearing on the TPR Petition. The court heard testimony from Father, Mother, and Stepfather. At the conclusion of the hearing, the trial court granted the TPR Petition and terminated Father's parental rights to Child.

Father timely appealed. Both Father and the trial court complied with Pa.R.A.P. 1925.

Father raises a sole issue for our review: "Did the trial court err by terminating the parental rights of [] Father?" Appellant's Br. at 3.

When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id***. (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision,

the decree must stand." ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. ***In re T.S.M.***, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." ***Id.*** Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." ***In re Adoption of A.C.***, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." ***Id.*** (citation omitted). If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." ***Id.*** (citation omitted).

In his sole issue before this Court, Father avers that Mother and Stepfather did not provide clear and convincing evidence to support the termination of his parental rights pursuant to Section 2511(a)(1). Father's Br. at 8. Father argues that, in light of the totality of the circumstances, a

termination of his parental rights was unwarranted. *Id.* at 7. Father contends that Mother never invited him to Child's school performances, that Mother acted as "gatekeeper" and stated he could not see Child unless he did what Mother wanted, that he cares about Child and has an "excellent relationship" with her, and that he is worried about Child's mental health because Mother and Stepfather "erased [Father]'s name and lineage." *Id.* Upon review, we find no abuse of discretion.

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that "the parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). The focus of involuntary termination proceedings is on the conduct of the parent and whether that conduct justifies a termination of parental rights. *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001). Although the statute focuses on an analysis of the six months immediately preceding the filing of the petition, "the court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008) (citation omitted). Rather, "[t]he court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the

circumstances, clearly warrants the involuntary termination." *Id.* (citations omitted).

This Court has repeatedly defined "parental duties" in general as the affirmative obligation to provide consistently for the physical and emotional needs of a child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty . . . requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations and internal paragraph breaks omitted).

Moreover, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id.* (citation omitted). "A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." *Id.* (citation omitted). And most importantly, "[p]arental rights are not preserved by waiting for a more suitable or

convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *Id.* (citation omitted). Simply put, "adequate parenting requires **action** as well as **intent***.*" *In re J.W.*, 578 A.2d 952, 959 (Pa. Super. 1990) (emphasis in original).

The trial court credited Father's own testimony that he had not seen, contacted, or sent presents to Child since she was five years old, that he did not know basic information about Child's school and health, and that his poor relationship with Mother prohibited his contact with Child. Trial Ct. Op., dated 5/7/20, at 2-3. The trial court opined:

> Here, Father clearly has failed or refused to perform parental duties for a period of 4 years. The testimony from both Father and Mother demonstrated that Father's last contact with [] Child was in December 2016, which was four years prior to the hearing. Additionally, there was testimony that Father had not contacted Mother to see or speak with [] Child in the previous four years, despite having Mother's contact information. When asked about why he had not contacted Mother regarding [] Child, Father explained that he "just couldn't deal with that, too." Father had not sent [] Child a birthday gift or Christmas present in the previous four years. Additionally, Father did not know basic information about [] Child, including the name of her school or her health. Significantly, Father never filed for custody or visitation of Child[,] despite filing a [P]etition to [D]isestablish [P]aternity previously in New Jersey. Father also testified that he had not provided any additional financial support to [] Child beyond child support and was unaware if she had the necessary health insurance card to use those benefits. Accordingly, this Court properly terminated Father's parental rights pursuant to section 2511(a)(1).

*Id.* at 5-6.

Our review of the record supports the trial court's determination that Mother and Stepfather met their burden under Section 2511(a)(1). As the

trial court concluded, Father has clearly failed to perform parental duties for almost half of Child's life. Father failed to act affirmatively and utilize all available resources to maintain a parent-child relationship with Child. Instead, by Father's admission, he chose to let his poor relationship with Mother prevent him from seeing and contacting Child. Consequently, Mother and Stepfather have provided Child with her physical and emotional needs for over four years while Father essentially abandoned Child. As discussed above, Father cannot preserve his parental rights by waiting for a more suitable or convenient time to be a part of Child's life while Mother and Stepfather assume all parental responsibilities for Child. As the trial court stated on the record, "Children deserve better than that." N.T. Hearing, 3/11/21, at 49.

The record supports the trial court's findings, and we decline to reweigh the evidence. Accordingly, we find that the trial court did not abuse its discretion when it terminated Father's parental rights to Child pursuant to Section 2511(a)(1).[1]

Order affirmed.

---

[1] Father did not challenge the termination of his parental rights pursuant to 23 Pa.C.S. 2511(b) in his Rule 1925(b) Statement, in his Statement of Questions involved, or in the Argument section of his Brief. Therefore, we conclude that any challenge to Section 2511(b) is waived and we decline to address it *sua sponte*. **See In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa. Super. 2017) (holding that the appellant waived her challenge to Section 2511(b) by failing to include it in her Rule 1925(b) statement and statement of question involved).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/21